324-0444 and Davis, individually as trustee of the Patricia M Trust Trust opponent by Ted A. Myers versus the Timothy Trust and Kevin's Trust at all accolades by Jennifer Brooks. Mr. Myers you may proceed. Good morning, your honors, and may it please the court, my name is Ted Myers and I represent Ann Davis, who is the trustee and sole beneficiary of Patricia Scheck Trust, which owns 49% of Scheck Lumber Company. Scheck Lumber Company is a lumber wholesaler and since the brothers, who own 51%, took over in 2003, it's been very profitable since they took over. The problem is that in the 15 years that Ann has owned it, after she inherited it from her mother, she has not received a single penny of economic benefit from her ownership. And the reason for this is by design. The brothers instituted a corporate freeze-out scheme, which is quite simple. Rather than distribute profits by pro rata, by ownership, they declare arbitrary and excessive bonuses to wipe out the profit. So there's nothing. They're getting the benefit and Ann is not. Now this complaint before the court does not go over the 15 years Ann owned it, but it's limited to the period 2018 to 2021. During this period, this four years, the brothers awarded themselves $2.2 million in salaries, nearly $4 million in bonuses, and $377,000 in tax distributions. During the same four year period, Ann received $364,000 to cover the taxes she has to pay because she's an owner. Now, in an attempt to stop this practice, in March of 2023, Ann filed this complaint. Now the operative complaint, the second amended complaint, before this court is two counts. The first count is a breach of fiduciary duty for both Ann as a shareholder and the company derivatively. And the second count seeks remedies under section 12.56 of the Business Corporation Act for oppressive conduct. Now, the response claims that the only four non-conclusory allegations of these complaints are the four paragraphs that talk about the compensation. But this is completely incorrect. Does that follow at all the law? The well-pleaded allegations set forth a very clear story, based on facts, of the corporate freeze-out scheme. For example, that the salary and bonuses which the brothers awarded themselves is significantly greater than the value of the services rendered. That's paragraph 24. That the brothers never provided Ann any justification of the bonuses that they planned to award themselves prior to the annual meeting, paragraph 29. That the amount of the bonus was not correlated to the company's profitability or any other objective performance criteria, paragraph 30. That Ann has consistently objected to the brothers' salary, awards, and bonus awards, paragraph 33. And that since 2009, when Ann inherited her interest in the company, she has not received any economic benefit from her ownership, despite the millions in profits the company is making. Now, the trial court dismissed both counts for failing the State of the Bible's clause match. And the court basically made this ruling by finding that the pleadings did not establish or put at issue the compensation as being unreasonable. There wasn't enough pled to even bring it to the court of whether this compensation was reasonable. And the court's rationale is almost entirely dependent on its reading of Romanek v. Lurie, Home Supply Company. And the response actually quotes Lurie in sentence two of the opinion, which lists the factors the court should consider, the trial court should consider, when determining reasonableness of compensation. Those factors are somewhat minute to some degree, but it can involve how many hours they work, what the quality were. Did the work help the profitability of the company? Do we have expert opinions on whether the compensation paid is comparable to peers in the industry? Now, the error is quite clear because the trial court applied both Romanek wrong from a procedural standpoint and a substantive standpoint. Procedurally, Romanek is not a pleadings case. It was an appeal after a trial in the merits. And the court made this perfectly clear because the very first sentence of the opinion, which was omitted from the respondent's brief, is whether compensation is reasonable is a question of fact. It is not a pleading question. It is a question of fact. And what's interesting is that the court basically held that the complaint, the allegations, did not even bring the issue to the court. It wasn't enough that all the allegations, I imagine, plus another 50 I didn't, wasn't enough to bring the issue to the court, despite the fact that the brothers who already got awarded themselves handsome salaries, awarded themselves bonuses of 175% of those salaries without any objective criteria at all. The only criteria that should be reasonably inferred, which is a standard under 2615 in favor of the plaintiff, is it was designed to deny Anne her rightful share of the profits. So the other fundamental misunderstanding I think the court has on Romanek is that as to the burden of proof, the ultimate burden of proof at trial, it won't be on Anne to demonstrate the reasonableness. What Lurie says in his third sentence is, and I quote, when self-dealing is involved, the recipient of the compensation has the burden. So when this case goes to trial, Anne will certainly present her evidence of why it's not reasonable. But the burden, the initial burden, because they have fiduciary duties, is on Anne. They're the ones that should have all these factors figured out and demonstrate why 175% of salary is a proper bonus. Please provide that information. That will be at the trial. Counsel, didn't the corporate, or didn't the company also retain substantial earnings? Well, over time, there was retention, and they could, for lots of reasons, retain earnings. And we're not arguing that those could have been good reasons. But when distributions are made of retained earnings, they still should go to the shareholders according to their ownership and not in a form of bonuses. That's what's been happening. We don't even know at some point if some of the retained earnings are being distributed as bonuses or if it's just profits for that year. But we do know one thing. These payments aren't made in accordance with ownership. They're made in accordance with the work that they're putting in, their salaries, right? Well, that's going to be the question, ultimately, is are the salaries reasonable? Are the bonuses reasonable? What are the accounts to waste for the corporation? And the brothers are going to have that burden, Judge, to do this. It's going to be the brother's burden. Anne's going to have the opportunity for that evidence. But at the pleading stage, it's clearly error to rule that it's not an issue. You didn't put it up to make it an issue. Ms. Davis, other than making sure her tax has been covered, she's never received anything? Not a single penny. And that's certainly our allegation in the complaint, which has taken us through at this point. And I would also point out that Shlensky, the Supreme Court, confirmed where the burden of proof will lie at the end of this case. So I think what is most remarkable in the response is that the brothers don't deny this scheme exists. They admit it, and they seem proud of it. And there's a reason they seem proud of it. You can see it in pages 38 and 39 of their brief. It's because they honestly, I believe it's honestly, don't believe Anne is entitled to receive any share of the profits. And they point out she shouldn't complain because she didn't pay for her shares. She inherited them. They point out she doesn't work at the company. She doesn't contribute to the company's profits. And all that's true. But that doesn't change the fact that she's a shareholder that owns nearly half of the equity. They also spent some time being quite proud of the victory they achieved in Cook County in the 2009 lawsuit. That lawsuit was filed not initially by Anne, but by the mother of all the parties, Patricia Shank. And Patricia Shank sought relief under 8.35B of the Business Corporation Act to remove them as officers and directors for conduct that they felt was not in the best interest of the company. Now, the standard is really quite high under 8.35B to remove majority shareholders running a company. And Judge Flynn held on that issue that at that point when the case was resolved in 2016, that Anne had met that burden of proof. But I think what you see in the response is that the brothers view that as being approval of their conduct. That they won, that this is what they're doing is okay. But if you read Judge Flynn's opinion, it's very well thought out. It's about 32 pages. Judge Flynn says repeatedly that and recognizes that Anne is being oppressed. It's oppressive conduct. He makes those findings. He says, unfortunately, the case was brought under 8.35B. She did not seek relief under 12.56, and I can't help you. But what Judge Flynn said at the end is, I feel dissatisfied with this result because I know these parties will probably come back to court. Now, they wouldn't go back to court if the brothers changed their ways. But here we are, eight years later, same conduct. All the money goes to the brothers, nothing to Anne. Now, I should also mention Judge Flynn's decision does not in any way condone their compensation system or bonuses. It really doesn't get to that issue, but there's no way that's race judicata or collateral estoppel. That wasn't an issue and certainly wouldn't exonerate them going forward to do as they please. Now, according to the Sheck brothers, their oppression to Anne is further justified because, I quote from page 38, SLC has been consistently profitable under the Sheck defendants' leadership. That's their justification. Now, what we will say and concede is that Sheck Lumber has been immensely profitable under the Sheck brothers' leadership. But there lies the problem. Anne is being denied her rights to the profits of the Sheck Lumber Company. And with the brothers, and based on their attitude, they don't believe they have any fiduciary duty to Anne to pay her the share of a 49% shareholder. They don't think she deserves it, and that's why they're not doing it. So it doesn't – the fact that the company's making profits certainly doesn't do Anne any favors here. Unfortunately, the trial court adopted the brothers' reasoning in its decision and actually commented in the record, I quote, Anne is a minority shareholder who just doesn't like the decision of the majority shareholders because she wants money. Now, the trial court is absolutely correct that Anne is in court because she wants money, but we submit that after reasonable compensation is paid to the brothers – and they deserve reasonable compensation – Anne also is legally entitled to her share of the profits. And that's not a reason to keep Anne in court because she wants her share as a 49% shareholder of the profits. Now, I still have a little time. I was going to briefly address the two cases that were pleading cases that the trial court mentioned in support of its decision. That was the Ellaby v. Forrest alarm service case and then Polikoff v. Dole. In Ellaby, a 60% shareholder tried initially to work out a deal with the other shareholders to buy her out. She didn't want to be in anymore. When they couldn't reach terms, she filed a breach of fiduciary duty claim alleging some financial improprieties, including unauthorized bonuses. Now, the trial court found that the allegations were so vague there was no cause of action. With respect to the bonuses, the plaintiff pled nothing about who authorized the bonus, the amount of the bonus, who received the bonus. The court said, this is not enough here to move forward on a suit for breach of fiduciary duty. Likewise, in Polikoff, a 2% shareholder of a company that owned a commercial building in Chicago and didn't like management and then couldn't work out a deal, so filed a suit under the predecessor to 1256 seeking liquidation. The 2% shareholder wanted to liquidate the company. The court said, that's a drastic remedy. You better show fraudulent conduct or illegal conduct. So the plaintiff filed a claim and said, the defendants are fraudulent and illegal in what they're doing, but didn't say what they're doing. Now, those type of pleadings actually are conclusory and are properly discussed. That doesn't resemble what's before the court. We have a very detailed complaint that I think demonstrates one of the clearest cases of a corporate freezeout that you can have. And to have bonuses of this magnitude authorized without any objective criteria. Clearly, if this case goes to trial, the defendants aren't meeting the Romanik standards at all by just issuing bonuses to themselves. They're going to have to come up with some really good evidence of how 275% makes sense. And the only inference you can have at this point, reading the pleadings, which you must in favor of the plaintiff, is that if Anne's not getting any money, and they're issuing these types of bonuses, it clearly must be because they're executing a corporate freezeout, which is improper, certainly a violation to the company's rights because that's a waste of company assets, and certainly vile of Anne's rights. Mr. Myers, you will have an opportunity in reply. Sorry about that. Getting carried away. No, thank you. Very good. Thank you. Ms. Schwartz. May it please the Court. I'm Jennifer Schwartz, and I represent the Appellees, the Sheck defendants. This is the third action the plaintiff has prosecuted against her brothers. The previous lawsuits resulted in judgments in the Sheck defendants' favor. Plaintiff's appeal in this third action fails for primarily two reasons. First, the Second Amendment complaint does not feed necessary facts, and plaintiff forfeited her right to argue that she could cure the Second Amendment complaint's defects with further pleading. In our brief, we also argue that the Circuit Court's judgment can be affirmed on alternative grounds under 2619. I'm happy to address any questions the Court may have about our 2619 arguments, but we don't think you even need to get there to affirm, and so therefore I do plan to focus my oral argument today on why the Circuit Court's judgment should be affirmed under 2615. To that point, plaintiff's appeal first fails because the Second Amendment complaint does not plead sufficient facts to show a breach of fiduciary duty or a violation of Section 12.56 of the BCA. Plaintiff's claims are premised on conclusions that Kevin and Tim received excessive officer compensation and that excessive compensation was paid to unlawfully freeze the plaintiff out. The Circuit Court properly found those conclusions were not supported by pleaded facts. First, there aren't pleaded facts to support the inclusion of excessive officer compensation. The Second Amendment complaint alleges the amount of compensation Kevin and Tim received each year, but there aren't any other facts to show that that amount was excessive. There aren't any facts regarding Shek Defendant's work, such as the duties they performed, the amount of time they devoted to the company. There aren't any facts regarding details facts regarding the financial condition of the company or how it was impacted by Shek Defendant's work. No facts regarding how their compensation compared to executives at other lumber companies. Plaintiff wants this court to assume, without any factual context, that the compensation amounts alleged in the complaint were too much. Now, that conclusion would be speculative in any event, but on top of that, this isn't a situation where the relevant facts are outside of plaintiff's knowledge. She admits in her brief she is a knowledgeable director of SLC who has personal knowledge of Shek Defendant's work and compensation, yet the Second Amendment complaint relies on bare conclusions as opposed to specific facts. Why? Because the relevant facts aren't helpful to the plaintiff. Plaintiff admits, and we've heard counsel state, that she doesn't dispute Kevin and Tim are entitled to officer compensation. In fact, in her brief, she refers to them as, quote, key employees of SLC. She also cites to and relies on Judge Flynn's judgment that was entered in 2016 in the party's first shareholder action. Judge Flynn's judgment details how Kevin and Tim have dedicated their working lives and personal finances to the business. They were the drivers of its success. In Judge Flynn's own words, Kevin and Tim are SLC and have been for years. Particularly given the undisputed fact record that Kevin and Tim, their value and importance to Shek Lumber, the Second Amendment complaint's failure to plead specific facts is fatal to plaintiff's claims. Plaintiff has argued or wants the court to believe that the amounts of compensation alleged in the Second Amendment complaint are so egregious on their face that she doesn't have to plead anything else. That argument falls apart for a lot of reasons. First, plaintiff hasn't cited any cases that stand for the proposition that simply pleading a dollar amount is sufficient to state a valid claim. And in fact, numerous officer compensation cases, including Polakoff, which was a pleading case, Romanoff, and Jaffe, all cited in our brief, routinely hold that officer compensation is fundamentally a business decision for the board of directors. And that decision will not be subject to judicial scrutiny, absent a finding that the compensation rose to the level of corporate waste. And even when the court is going to review an officer compensation decision, it can't do so in a vacuum. But it has to consider numerous factors related to the compensation, facts related to the officer's work and the financial condition of the company. And that just makes sense. And even if it were appropriate to look at compensation in a vacuum, which we don't think it was, plaintiff's own side of law undercuts any claim that the compensation amounts applied in this complaint could be deemed per se unreasonable on their face. Plaintiff relies heavily on the Kovac versus Barron case. In Kovac, the complaining shareholder, not the defendant, was receiving officer compensation, including bonuses, that amounted to roughly $700,000 per year more than 15 years ago. In this case, on average, the Second Amendment complaint alleges that SLC's key executives were receiving roughly $775,000 per year, which is in line with what the complaining shareholder in Kovac was making more than 15 years ago. Simply, the compensation amounts on their face are not sufficient without other facts to plead a valid claim. What about this claim that Ms. Davis has never received anything? Your Honor, so like compensation decisions, whether to declare a dividend and the amount of the dividend is fundamentally a business decision, both case law and by statute. That is a decision that has to be made by the board of directors. And that decision is not subject to judicial attack unless it's shown to be completely and totally without merit or fraudulent. The Second Amendment complaint doesn't plead facts to show either of those things. You do have a profitable company, and these gentlemen are making a lot of money, and largely because of their hard work. But you have a profitable company that has never made a distribution to Ms. Davis. And, Your Honor, I would submit, so the Romanat case, which we actually cite in our brief, in that case, same situation. Dividends were never paid in the history of the corporation, despite the corporation being profitable, and the court found that was fine. That was that the board did not abuse its discretion in never declaring a dividend. Because there are valid business reasons for retaining earnings, especially whereas here we have a cyclical business. There are certainly sound business reasons for returning the cash surplus. Plus, again, this is, we're on the plane of spirit complaint. She is a knowledgeable director of SLC. The Second Amendment complaint doesn't even acknowledge that Chuck Comber has retained earnings. She actually hasn't pled a claim that alleges that there are retained earnings that should have been distributed. So we're kind of talking about a hypothetical claim here that hasn't been pled. But she had the opportunity to plead, you know, we don't know anything about these retained earnings. Plaintiff hasn't pled. Are those retained earnings sitting in a bank account? Have they been invested? Were they earmarked for a specific purpose? Were there tax implications as to retaining earnings as opposed to paying them out as distributions? There is no absolute right that a shareholder has to dividends. I mean, that's the position the plaintiff has taken. But the case law holds otherwise, and the statute holds otherwise. A shareholder does not have an absolute right to distributions. In fact, when you buy in, or in this case, inherit a right to stock in the company, you impliedly are agreed to be bound by the decisions made by the majority. And there's simply no facts. And, again, we also have the Second Amendment complaint does not have any facts to show the plaintiff has invested any capital or other contributions to the SLC that should be repaid through distributions. There aren't any facts to show that SLC has ever made distributions larger than each shareholder's tax liability, including before when Ann became a shareholder. So it's not like the SLC's practice with respect to distributions changed in some manner when Ann became a shareholder. And plaintiff hasn't alleged that there's no valid business reasons why SLC has retained earnings. She actually hasn't even alleged that she ever made a proposal to the board, either as a shareholder or director, requesting that the board pay larger dividends. She's jumped the gun here by bringing a lawsuit without pleading any facts, underlying facts. And, again, this is the third complaint. If those facts existed that could support plaintiff's claims, she had the opportunity to plead them. She could have pled them. I would submit that she did not plead them because they don't exist. Plaintiff also argued that there's various conclusions, which we would submit are fact conclusions, not supporting conclusions. And the complaints, those support her claims, but they aren't. Allegation that bonuses were not based on any objective criteria. That is a fact conclusion that is not deemed admitted on a motion to dismiss. And, again, plaintiff had the opportunity to support that fact conclusion with specific facts but didn't. And in her briefs, she admits that Chuck Lumber has been profitable under Kevin and Tim's leadership and that bonuses were determined only after SLC's year-end profits were calculated. So by plaintiff's own admission, bonuses were actually directly tied to SLC's success and profitability. They weren't arbitrary. Plaintiff has argued that whether compensation was reasonable is a question of fact and that ultimately, Chuck defendants would have bared the burden of proof. Those arguments missed the mark. The issue before this court is the legal sufficiency of the second-minute complaint, not the merits. And plaintiff is required to plead facts to state a valid claim. And even if the burden of proof were an issue in this case, which it is not, plaintiff continues to rely on, well, she cites Romanek, and Romanek did state that the burden of proof rested on the defendants. But Romanek predated Section 8.05 of the BCA. So before Section 8.05 of the BCA was enacted, which then states that officer compensation decisions are to be treated differently than other types of interested director transactions with respect to the burden of proof. So as to the burden of proof, Romanek was essentially abrogated by Section 8.05 as to the burden of proof. She also cites Schlinsky in her reply brief for the first time and relies heavily on Schlinsky. Schlinsky was in an officer compensation case. And so it would be inapplicable as to the burden of proof because, again, non-compensation interested director transactions are treated differently with respect to the burden of proof than compensation decisions are. Whether the second-minute complaint is viewed in isolation or in connection with the admissions made in plaintiff's briefs and or Judge Flynn's judgment in 2016, the second-minute complaint does not feed facts in which this court could reasonably infer Shek defendant's compensation constituted a breach of fiduciary duty or a statutory violation of Section 12.56. There is also no facts to support this conclusion that she's been unlawfully frozen out of SLC. She admits that she's a director. She admits she's had the opportunity to attend and participate in shareholder and director meetings. The mere fact that she's been outvoted by the majority does not state a valid claim. And in fact, Judge Flynn did not say in his judgment, and your honors will be able to read that judgment if you haven't already, he did not hold that plaintiff would have prevailed on a Section 12.56 claim had she made it. In fact, he really indicated the opposite. He said, while it's true that plaintiff has been unsuccessful in getting anything done, she's outvoted by the majority. That is a lawful reality of corporate law. The mere fact that you're outvoted by the majority is not unlawful under corporate law. So corporate law gives a shareholder the right to vote. It doesn't guarantee the outcome of a particular vote. And that's particularly true where we're talking about a successful business that has been profitable under Kevin and Tim's leadership. Plaintiff has echoed the taglines, excessive compensation, and corporate free fall throughout this case, but those taglines are not supported by pleaded facts as they must be. Therefore, the Circuit Court properly dismissed the complaint under Section 261. The second reason the plaintiff's appeal fails is that she forfeited any right to argue that she could cure the Second Amendment complaint's defects with further pleading. Plaintiff never asked for a leave to file a Third Amendment complaint before the Circuit Court. And therefore, the Second Amendment complaint must stand or fall on what's already been pleaded. And it falls for the reasons I've discussed. And even if forfeiture didn't apply, the Circuit Court's decision to terminate the litigation will be reviewed for an abuse of discretion. There is nothing unreasonable or arbitrary about the Circuit Court's decision. Plaintiff had three opportunities to plead. She essentially filed, refiled the same complaint three times because she couldn't plead anything new. And in fact, she admitted to the Circuit Court on the record that she couldn't plead anything new. The Circuit Court acted well within its discretion when it dismissed the Second Amendment complaint with prejudice. For the reasons discussed, Your Honors, and the reasons set forth in our brief, including our 2619 arguments, we respectfully request this Court affirm the Circuit Court's judgment. Ms. Schwartz, thank you. Mr. Myers? Thank you, Justices. Mr. Myers, can you start by addressing Ms. Schwartz's suggestion that Romanek's burden of proof analysis might be obsolete in light of 805? Well, that's an interesting conclusion. If you read Section 805 of the Business Corporation Act, it makes clear, which we intuitively know, that even in close-held corporations, the ability of people in control to award, and the statute is very clear, reasonable compensation is absolutely allowed. So just because you have control doesn't mean you need special approval to award yourself reasonable compensation. And a prudent owner of a closely-held company, especially one that is in control, would take heed of the Romanek factors when they decide how much bonus and compensation to be awarded. Now, what we heard was somehow that Ann hasn't done enough because she hasn't taken it upon herself to determine and provide all the evidence necessary to disprove that 175% of salary is a proper bonus. What Ann does say, and she has direct knowledge of it, it's not conclusory because she's on the Board, is that they've never provided her any explanation of why they're awarding any particular bonus. It just happens to drain the coffers, and certainly there is no follow-up profit distribution to say, you know what, we did a great year, we did great, we have all these performance things, we did great, but there's still a little left for you, Ann. But as I said when we started is that you have to take as true the allocation of the complaint and the reasonable inferences therefrom. And then the question, really the simple question for this Runder 2615, taking as true the allegations, looking at the inferences in favor of Ann, has Ann adequately pled the issue of reasonable compensation? Has she done enough to put that at issue? I submit when you apply 2615, she certainly has. And you can see the error that we keep hearing about is that somehow she had to plead Romanik. And Romanik couldn't be clearer that what they're talking about is what the prior fact is to determine. And Ann is certainly ready to do that when time comes and have experts. But to have experts prior or as part of the complaint attach reports, it doesn't make any sense. From a pleading standpoint. And I think as far as Judge Flynn's decision, I'm going to quote, save the justice some time. On page 9, Judge Flynn writes, Ann's frustration is understandable. She has a 49% interest in SLC, but she might as well have only a single share. Even prolonged over a period of years, however, that standoff alone cannot justify removing defendants under 8.35B. He was talking about the oppression under 1256, but it's not enough under 8.35B. And then at the end, it's kind of a futurist. He says the court considers the foregoing decision to be correct in terms of applying the pertinent law to the record of this litigation. As stated at the outset, however, it is not satisfactory, a satisfactory resolution. It neither solves nor resolves any of the underlying problems that is true both historically and prospectively. So Judge Flynn knew that unless the boys changed their ways, the brothers changed their ways. This would not end the litigation. And that's, as a judge, you always like to have finality. That's, I think, why 1256 is such an important law. I think what is clear, and if you take the record for what it says, Anne and the brothers should not be shareholders. They need to be separated, and 1256 provides mechanisms to provide a fair separation. And so we'll get asked that this court to reverse the June 6, 2024 order, send the case back, let's get this to trial, or maybe resolve it, but let's get this to trial. And then we can see how the Roman Act factors work out for the brothers. Thank you. Any questions? Very well. We thank both sides for their arguments. We will take the matter under advisement and render a decision in due course.